**Lola Balbona ALVAREZ, 445 E. Belgrade Street, Philadelphia, Pa.**

v.

**UNITED STATES of America. Civ. A. No. 12255.**

United States District Court
E. D. Pennsylvania.

Aug. 29, 1955.

**610**

Ostroff, Anderson & Lawlor, by Isidor Ostroff, Philadelphia, Pa., for plaintiff.

W. Wilson White, U. S. Atty., Alan J. Swotes, Asst. U. S. Atty., Philadelphia, Pa., for defendant.

GRIM, District Judge.

Louis M. Balbona was a World War II veteran. Lola Balbona Alvarez, the plaintiff, is his mother and the designated beneficiary under Louis' national service life insurance policies in the total amount of $10,000.

Balbona was honorably discharged from the army on November 4, 1945. His national service life insurance was kept in force until November 30, 1945, when it lapsed because of non-payment of premiums. No premiums were paid thereafter. He died on August 21, 1948, from far advanced pulmonary tuberculosis without ever having applied for a waiver of the premiums on his insurance. On September 17, 1948, plaintiff filed with the Veteran's Administration an application for a waiver of the premiums on Balbona's insurance, the waiver to relate back to the date of the lapse of the insurance. The application for waiver was disallowed and the present suit followed.

The present action has been brought under Section 602(n) of the National Service Life Insurance Act, as amended, 38 U.S.C.A. § 802(n), which provides that "Upon application by the insured * * * payment of premiums on such insurance may be waived during the continuous total disability of the insured, which continues or has continued for six or more consecutive months, if such disability commenced * * * (2) while the insurance was in force under premium-paying conditions * * *." The Act provides that if the application for waiver is filed on or before August 1, 1947, the waiver of premiums can relate back to August 1, 1941, but that if the application is filed after August 1, 1947, the waiver can relate back only for a period of one year prior to the filing of the application. The Act also provides "* * that in any case in which the Administrator finds that the insured's failure to make timely application for waiver of premiums * * * was due to circumstances beyond his control, the Administrator may grant waiver or continuance of waiver of premiums." It finally provides " * * * that in the event of death of the insured without filing application for waiver, the beneficiary, within one year after the death of the insured * * * may file application for waiver with evidence of the insured's right to waiver under this section."

At any time from December 1, 1945, to August 1, 1947, Balbona had the

right to have his service insurance reinstated merely by applying for a waiver of premiums and showing that he was totally and continuously disabled since November 30, 1945. After August 1, 1947, he had the right to have his insurance reinstated by filing an application for a waiver of premiums showing (1) that he was continuously and totally disabled since November 30, 1945, and (2) that his failure to apply for a waiver on or before August 1, 1947, was due to circumstances beyond his control. When he died on August 21, 1948, his beneficiary for a period of one year succeeded to his right to apply for reinstatement of his insurance and a waiver of the premiums, the reinstatement and waiver to relate back to November 30, 1945. Therefore, in the present case the plaintiff has the burden of proving (1) that Balbona was continuously and totally disabled from November 30, 1945, to the time of his death and (2) that Balbona's failure to apply for a waiver of the payment of the premiums on his insurance was due to circumstances beyond his control.

The case has been tried before a jury which answered in the affirmative two special questions which were put to it under Rule 49(a) of the Federal Rules of Civil Procedure, 28 U.S.C. The questions were:

"1. Was Louis Balbona continuously and totally disabled during the period from November 30, 1945, to the date of his death on August 21, 1948?

"2. Was his failure to apply for a waiver of the payment of his G.I. insurance premiums due continuously during the above-mentioned period to circumstances beyond his control?"

Defendant has filed motions for judgment n. o. v. in its favor and for a new trial contending that the findings of the jury are not properly supported by evidence in the case.

▆ A medical witness for the plaintiff, who was a specialist in diseases of the chest, testified that he examined the x-rays of Balbona's chest which were taken when Balbona was discharged from the army, and that from this examination and the consideration of other evidence in the case it was his opinion that Balbona suffered from active pulmonary tuberculosis from the time of his discharge from the army to the time of his death and that he should have had complete institutional bed rest. The substance of his opinion testimony was that from the time of Balbona's discharge from the army to the time of his death, because of his tubercular condition, Balbona could not follow any gainful occupation without substantial injury to his health. There was sufficient evidence to support the jury's finding that Balbona was continuously and totally disabled from November 30, 1945, to the time of his death.

Defendant's principal contention is that the evidence does not support the jury's second finding, which is that Balbona's failure to apply for reinstatement of his insurance and a waiver of the premiums was due to circumstances beyond his control.

There were definite indications beginning at the time when Balbona was discharged from the army that he had active tuberculosis. He complained of extreme fatigue, lack of appetite and was very listless. He was underweight, had a chronic cough and his appearance was bad. But no diagnosis of tuberculosis was made until he entered a veterans' hospital on February 13, 1948. He was given a customary physical examination, including chest x-rays, when he was discharged from the army, but no diagnosis of tuberculosis was made at that time. He was a patient in the Philadelphia Naval Hospital from May 18 to June 29, 1946, because of his weakened condition. Tubercular tests were given him during this hospital confinement, but they were negative and no diagnosis of tuberculosis was made at that time. He attended Bok Vocational School in Philadelphia from August, 1946, to January, 1948. At this school his attendance was good; he was better than average as a student; and he even played baseball as part of the intramural sports program of the school.

**612**

Although there are many indications that Balbona suffered from tuberculosis at all times from the date of his discharge from the army, the evidence is strong that he did not know of it.

Plaintiff's contention is that Balbona's lack of awareness of his serious illness and his real physical condition constituted a circumstance beyond his control and was a legal excuse for his failure to make a timely application for reinstatement of his insurance and a waiver of the premiums.

In Landsman v. United States, 92 U.S.App.D.C. 276, 205 F.2d 18, a suit was brought on a policy of national service life insurance by a widow beneficiary of a war veteran. The veteran contracted Hodgkins' disease during his period of service and was suffering from it when he was discharged. He was continuously and totally disabled from his disease from the time of his discharge from the army until the time of his death about two years later. He had let his service insurance lapse and had not applied for reinstatement. Until shortly before his death he was unaware of his real condition and of the serious nature of his illness. In reversing the District Court which had denied recovery, the Court of Appeals for the District of Columbia said, 205 F.2d at page 22:

"Giving the phrase 'circumstances beyond * * * control' its fair meaning, free of artificial restriction, we think that ignorance of the existence or seriousness of an injury or disease may in a proper case constitute such a circumstance —if the ignorance is in fact beyond control. Here, the plaintiff in substance alleges that the insured

consulted physicians, freely revealed his symptoms, and was guided by the advice received: but that his true condition was not diagnosed until he was on his deathbed. We think that on these allegations it was error to conclude as a matter of law that the insured's failure to apply for waiver of premiums was unexcused."

The Landsman case has been followed by the Court of Appeals for the Eighth Circuit in a tuberculosis case, United States v. Myers, 213 F.2d 223, and by the Court of Appeals for the Ninth Circuit in a case involving chronic leukemia, Kershner v. United States, 215 F.2d 737. Under the principle of law established by these cases and in view of the evidence indicating that Balbona was unaware of the serious nature of his illness although he had much medical attention, it is apparent that there is sufficient evidence in the present case to support the jury's finding that Balbona's failure to make timely application for reinstatement of his insurance and a waiver of the premiums thereon was due to circumstances beyond his control.

Defendant contends that the phrase "circumstances beyond Balbona's control" should have been defined more specifically by the trial judge in his charge.[1] Particularly, it contends, that the jury should have been instructed that mental incompetence was the only circumstance which could have excused Balbona's failure to apply for a waiver of the payment of his premiums.[2] There is some authority for defendant's contention, see Aylor v. United States, 5 Cir., 1952, 194 F.2d 968, but the later cases, cited above,

[1]. The trial judge told the jury in reference to this problem to consider along with the other evidence in the case the fact that there was no evidence that Balbona was told that he had tuberculosis prior to February, 1948, and that he was discharged from the Naval Hospital in 1946 with a diagnosis of no disease. He also told the jury to con-

sider the fact that Balbona's sister had died of tuberculosis.

[2]. There was no evidence of mental incompetence in the case. If defendant's contention were correct, a verdict should have been directed in favor of the defendant at the time of the trial. No instruction to the jury defining "circumstances beyond control" would have been necessary.

seem to represent the better view and will be followed.

Defendant's motions for judgment n. o. v. and for a new trial will be denied.