VICTORE INSURANCE COMPANY,
Appellant,

v.

CITY OF BOWIE, Texas, Appellee.

No. 2–99–070–CV.

Court of Appeals of Texas,
Fort Worth.

June 1, 2000.

Publication Ordered June 1, 2000.

Vernon & Duray, L.L.P., Michael P. Duray, Dallas, for appellant.

Brenda Rotramble, Decatur, for appellee.

Panel A: CAYCE, C.J.; DAY and DAUPHINOT, JJ.

## OPINION ON REHEARING

CAYCE, Chief Justice.

### I. Introduction

We grant Victore Insurance Company's motion for rehearing, withdraw our opinion and judgment of March 9, 2000, and substitute this opinion and judgment.

The primary issue we must decide in this appeal is whether Diamondback Construction, Inc., a public work contractor, acquired a property interest in the final payment due under its public work contract with the City of Bowie, Texas even though Diamondback failed to pay all costs necessary to complete the contract. Because we hold Diamondback did not acquire a property interest in the remaining contract proceeds, we will reverse the trial court's judgment in part.

### II. Background Facts

In February 1992, Diamondback and the City entered into a public work contract for the construction of wastewater collection line improvements. Because of the contract amount, both performance and payment bonds were required. *See* Tex. Gov't Code Ann. § 2253.021(a) (Vernon Supp.2000).[1] Victore, as surety, issued both bonds to ensure completion of and payment for the contract.

Although the contract was eventually completed in October 1992, Victore had to cover Diamondback's payroll for two months while the project was under construction. Victore notified the City not to make any more progress payments under the contract, and the City received numerous claims from Diamondback's subcontractors and suppliers who had not been paid. After charging $16,800 in liquidated damages against the contract balance for completion delays, in December 1992 the City notified Victore that $33,149.85 in contract proceeds had not been paid to Diamondback.

In November 1992 and February 1993, the City received notices from the Internal Revenue Service of two tax levies against Diamondback's property. Over Victore's objections, the City paid the $33,149.85 in remaining contract proceeds towards the IRS levies rather than holding the proceeds to satisfy the subcontractors' and suppliers' claims. Victore eventually paid nearly $37,000 to settle the subcontractors' and suppliers' claims and then sought to recover the $33,149.85 contract balance from the City, as well as $9,150 of the liquidated damages the City had charged against the contract.

After a bench trial, the trial court rendered a take-nothing judgment against Victore. Victore appeals from that judgment.

### III. The City's Liquidated Damages

In its first point, Victore complains the City improperly withheld liquidated damages from the contract balance because the project was completed on time. We hold the City was entitled to some, but not all, of the liquidated damages it withheld.

The contract allowed the City to recover $150 in liquidated damages for each day

---

1. The statute in effect in 1992 was article 5160 of the Texas Revised Civil Statutes. *See* Act of April 13, 1959, 56th Leg., R.S., ch. 93, 1959 Tex.Gen.Laws 155, 158, *amended by* Act of May 27, 1991, 72nd Leg., R.S., ch. 242, § 11.29, 1991 Tex.Gen.Laws 1068. That statute was repealed in 1993. *See* Act of April 30, 1993, 73rd Leg., R.S., ch. 268, § 46(1), 1993 Tex.Gen.Laws 986 (current version at Tex. Gov't Code Ann. §§ 2253.021(a), 2253.071 (Vernon Supp.2000)). There are no substantive differences between the former and current statutes that affect this case; thus, for simplicity, we will refer to the current version of the statute throughout this opinion.

Diamondback was late in completing the project. After work on the contract was completed, the City charged $16,800 in liquidated damages against the contract. The City was entitled to this amount only if Diamondback was 112 days late in completing the contract (112 × 150 = 16,800).

■ The parties stipulated, and the trial court found, that Diamondback had 150 days to complete the contract but took 201 days to complete it. Victore also requested a fact finding that Diamondback used 201 days to complete the contract and therefore cannot complain about this finding on appeal. *See Metzger v. Sebek,* 892 S.W.2d 20, 42 (Tex.App.—Houston [1st Dist.] 1994, writ denied), *cert. denied,* 516 U.S. 868, 116 S.Ct. 186, 133 L.Ed.2d 124 (1995).

■ Nonetheless, Victore can challenge the correctness of the trial court's legal conclusions based on these facts. *See Forbis v. Trinity Universal Ins. Co.,* 833 S.W.2d 316, 319 (Tex.App.—Fort Worth 1992, writ dism'd). Although the trial court did not make any separate conclusions of law, its take-nothing judgment against Victore on the liquidated damages issue is a legal conclusion that the City was entitled to the entire $16,800 because the project was completed 112 days late. This conclusion is incorrect, based on the trial court's finding that the project was completed in 201 days, or only 51 days late. Accordingly, the City was only entitled to $7,650 in liquidated damages (51 × 150 = 7,650). We sustain Victore's first point as to the remaining $9,150 of the $16,800 in liquidated damages.

## IV. Diamondback's Entitlement to the Remaining Contract Proceeds

In point four, Victore complains the City improperly paid the $33,149.85 contract balance to the IRS after receiving the notices of federal tax levies against Dia-

mondback because the contract proceeds were not Diamondback's property. We agree.

The Internal Revenue Code provides: "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount ... shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A. § 6321 (West 1989). The Supreme Court has construed this statutory language broadly, noting that the statute "reveals on its face that Congress meant to reach every interest in property that a taxpayer might have." *United States v. National Bank of Commerce,* 472 U.S. 713, 719–20, 105 S.Ct. 2919, 2924, 86 L.Ed.2d 565 (1985); *Medaris v. United States,* 884 F.2d 832, 833 (5th Cir.1989). A person who receives notice of an IRS levy must surrender to the IRS any of the delinquent taxpayer's property in the recipient's possession or any obligations, such as income, the recipient owes the delinquent taxpayer. *See* 26 U.S.C.A. § 6332(a) (West Supp. 1999).[2]

■ To determine whether property is subject to the federal tax lien, courts conduct a two-step analysis. First, they look to state law to determine whether the taxpayer has an interest in the property. *See National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. 2919, 2925; *Broday v. United States,* 455 F.2d 1097, 1099 (5th Cir. 1972). If the taxpayer has an interest in the property under state law, the tax consequences are dictated by federal law. *National Bank of Commerce,* 472 U.S. at 722, 105 S.Ct. 2919, 2925.

■ A lien arising under section 6321 cannot, however, extend beyond the property interests held by the delinquent taxpayer. *See United States v. Rodgers,* 461 U.S. 677, 690–91, 103 S.Ct. 2132, 2141, 76 L.Ed.2d 236 (1983); *Gardner v. United*

---

**2.** The two exceptions to the surrender requirement are not relevant to this appeal. *See id.*

*States,* 34 F.3d 985, 987 (10th Cir.1994). Consequently, a federal tax lien attaches only to the property interests of the delinquent taxpayer at the time of the assessment. *See Gardner,* 34 F.3d at 987.

■ The evidence in this case shows Diamondback had no state-law property interest in the contract proceeds at the time of the two tax assessments; therefore, the tax liens did not attach to the contract proceeds.

**A. The government code provided that Diamondback was not entitled to the proceeds.**

The government code provides that the proceeds of a public work contract are not payable to a contractor who abandons performance of the contract until all costs of completion are paid by the contractor or its surety. *See* TEX. GOV'T CODE ANN. § 2253.071(a) (Vernon Supp.2000). Victore had to meet Diamondback's payroll in July and August 1992 so that the project would be completed; thus, it can be argued that Diamondback abandoned the contract. If Diamondback abandoned the project, it was not entitled to the contract proceeds until all costs of completion were paid. This did not occur until September 1994, when Victore settled the last unpaid claim—more than eighteen months after both of the IRS assessments.

■ Moreover, the mere fact that all costs of completion were eventually paid did not entitle Diamondback to the contract proceeds. Once costs of completion are paid on a public work project, the remaining contract proceeds are to be paid according to the contractor's and surety's interests as may be established by agreement or by court judgment. *See id.* § 2253.071(b). The evidence is undisputed that Victore, not Diamondback, paid the costs of completing the contract when it satisfied the unpaid claims of Diamondback's subcontractors and suppliers. Thus, Diamondback's right to the remaining contract proceeds was never triggered under section 2253.071(b), and the pro-

ceeds were not Diamondback's property or an obligation that the City owed Diamondback. *See United States v. Peden Iron & Steel Co.,* 330 S.W.2d 635, 637 (Tex.Civ. App.—Texarkana 1959, writ ref'd n.r.e.) (holding that, because claims of unpaid suppliers and laborers exceeded funds city was statutorily required to withhold from contractor until all project costs were paid, neither taxpayer-contractor nor federal government had any right to the funds).

**B. The parties' contract provided that Diamondback was not entitled to the proceeds.**

■ The parties stipulated, and the trial court found, that the City had the contractual right to withhold from the contract proceeds any amounts that Diamondback had not paid suppliers and subcontractors. This finding is binding on the City because it is unchallenged and there is evidence in the record to support it. *See McGalliard v. Kuhlmann,* 722 S.W.2d 694, 696 (Tex.1986). Indeed, the evidence is undisputed that the public work contract provided for the City to withhold from payment any amounts Diamondback owed to subcontractors and suppliers. Where a project owner has a contractual right to withhold from a contractor amounts necessary to satisfy the subcontractors' and suppliers' claims, the retained funds are not the contractor's property, and the federal government cannot acquire the right to the funds via a tax lien against the contractor's property. *See Transmix Concrete v. United States,* 142 F.Supp. 306, 310–11 (W.D.Tex.1956).

The IRS's notices of levy directed the City to pay to the IRS any "income belonging to [Diamondback] that you now possess or for which you are obligated." Under both section 2253.071 and the contract, Diamondback had to complete the project and pay all of its subcontractors and suppliers to acquire an interest in the remaining contract proceeds. The parties agree that Diamondback failed to pay its subcontractors and suppliers; therefore,

the contract proceeds were never Diamondback's property or an obligation the City owed Diamondback. Indeed, the City could have asserted its lack of obligation to Diamondback as a defense against payment of the contract proceeds towards the IRS levies. *See National Bank of Commerce,* 472 U.S. at 724, 105 S.Ct. 2919, 2926 (stating that being neither in possession of nor obligated with respect to property belonging to delinquent taxpayer is a defense against payment of IRS levy).

Because Diamondback was not entitled to the contract proceeds, at the time of the assessments or after all contract completion costs had been paid, the two tax levies did not attach to the contract proceeds. *See Gardner,* 34 F.3d at 988 (holding that government's rights can rise no higher than those of delinquent taxpayer); *Transmix Concrete,* 142 F.Supp. at 310 (same). Accordingly, the City improperly paid the contract proceeds towards Diamondback's tax obligations.

### C. The City's Liability to Victore

■■■ A person who surrenders to the IRS property or rights to property in which the delinquent taxpayer has no apparent interest is liable to a third party who has an apparent interest in the property, unless the surrender is made based on a good faith belief that the property is subject to IRS levy. *See* 26 C.F.R. § 301.6332–1(c)(2) (1998). The City asserts that it is not liable to Victore for paying the contract proceeds towards the tax levies because Diamondback had an apparent interest in the proceeds, and the City therefore made the payments in good faith. However, the trial court did not find that Diamondback had an apparent interest in the proceeds or that the City paid the IRS levies in good faith. Because the trial court did not make findings on either element of this defense, the City cannot rely on it to support the trial

court's judgment. *See* TEX.R.CIV.P. 299 ("The judgment may not be supported upon appeal by a presumed finding upon any ... defense, no element of which has been included in the findings of fact").

■■■ Further, under the circumstances of this case, there is no evidence that would support such findings. The city manager admitted he did not obtain a legal opinion regarding whether the City was obligated to pay the contract proceeds towards the IRS levies. The City was certainly charged with knowledge of its own contract provision (and the law)[3] that Diamondback was not entitled to the contract proceeds if it failed to pay its subcontractors and suppliers. The City stipulated that it was aware of the numerous outstanding claims by subcontractors and suppliers against the contract proceeds long before it paid the IRS levies. In addition, the parties stipulated, and the trial court found, that the City withheld contract proceeds for its own liquidated damages before it paid the IRS levies. We question how the City could determine in good faith that (1) contract proceeds to cover its own liquidated damages were *not* Diamondback's property subject to levy, but (2) contract proceeds to cover the amounts Diamondback failed to pay its subcontractors and suppliers *were* Diamondback's property subject to levy.

For the foregoing reasons, we sustain point four. In light of our holding with regard to this point, we need not address Victore's second and third points.

### V. Victore's Remaining Issues

■■■ In points five, six, and seven, Victore contends the sovereign immunity defense is not available to the City, and the City is liable to Victore for prejudgment interest and attorneys' fees. The City has only briefed a response to the attorneys'

---

**3.** The provisions of section 2253.071 are to be read into a public work contract to the same extent as if they were expressly incorporated therein. *See First Hutchings–Sealy Nat'l* *Bank v. Aetna Cas. & Sur. Co.,* 532 S.W.2d 114, 116 (Tex.Civ.App.—Houston [1st Dist.] 1975, writ ref'd n.r.e.) (applying predecessor to section 2253.071).

fees issue; thus, we construe the City's brief as a concession that it is not immune from suit or from paying prejudgment interest if it is liable to Victore. In its reply brief, Victore concedes that it cannot recover attorneys' fees from the City. Accordingly, we overrule Victore's point regarding attorneys' fees and sustain the points concerning sovereign immunity and prejudgment interest.

## VI. Conclusion

Because the City improperly paid the contract proceeds towards satisfaction of the IRS levies, and because there is no finding or evidence that the City made the payment in good faith, the City is liable to Victore for the damages Victore incurred as a result of the improper payment. *See* 26 C.F.R. § 301.6332–1(c)(2); *see also City of Orange v. Fidelity & Deposit Co.,* 180 F.2d 369, 370–71 (5th Cir.1950) (holding that City that improperly paid contract proceeds upon completion of contract without first ascertaining whether subcontractors and suppliers had been paid, as required by predecessor to section 2253.071, was liable to surety for amounts surety had to pay under its bond). The trial court's findings of fact and the evidence establish that Victore's payments to Diamondback's subcontractors and suppliers exceeded the $33,149.85 in contract proceeds that the City withheld from Diamondback and paid to the IRS. Accordingly, Victore is entitled to recover that amount from the City.

We affirm the trial court's judgment as to Victore's claim for attorneys' fees. We reverse the remainder of the trial court's judgment and render judgment that Victore is entitled to recover $42,299.85 from the City: $33,149.85 in damages and $9,150 of the $16,800 in liquidated damages that the City withheld from the contract amount. We remand the cause to the trial court for calculation of applicable interest.